## In re STANDARD AERO CORPORATION OF NEW YORK.

## STANDARD AERO CORPORATION OF NEW YORK v. LEONARD.

(Circuit Court of Appeals, Third Circuit. February 4, 1921.)

No. 2620.

1. **Bankruptcy ⇐=81(4)—Allegation of act of bankruptcy sufficient.**

An allegation of an act of bankruptcy by a corporation, by making a preferential payment to a creditor while insolvent, *held* sufficient, although it did not state the name of the creditor nor the nature of his claim, where the books of the corporation had disappeared and its president, who drew the check with which the payment was made, was himself unable to remember such facts.

2. **Bankruptcy ⇐=76(1), 320—Judgment for waste founded on contract provable debt on which creditor may petition for involuntary bankruptcy.**

The New Jersey statute of waste, as construed by the courts of the state, while giving a remedy by an action on the case in the nature of waste founded on tort against certain classes of tenants, does not destroy the remedy by an action for waste founded on a covenant contained in the lease, and the judgment in such an action, although the claim was unliquidated at the time of the commission of an act of bankruptcy by the defendant, is provable under Bankruptcy Act, § 63a (Comp. St. § 9647[a]), and may be made the basis of a petition in bankruptcy.

Appeal from and Petition for Revision of Proceedings in the District Court of the United States for the District of New Jersey; Joseph L. Bodine, Judge.

In the matter of the Standard Aero Corporation of New York, alleged bankrupt. Charles H. Leonard, petitioner. Bankrupt appeals from and petitions for revision of an order of adjudication. Affirmed.

See, also, 270 Fed. 783.

M. Casewell Heine, of Newark, N. J., for appellant.

Frank P. McDermott, of Jersey City, N. J., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. By this order the District Court adjudged Standard Aero Corporation of New York a bankrupt. That corporation now attacks the validity of the order on many grounds, only two of which call for discussion.

During the war the corporation was engaged in building aeroplanes for the United States, receiving either by advances or payments, approximately $5,000,000. Its business ended with the armistice and its relations with the Government were concluded by a further payment of about $1,000,000. The corporation disbursed all the moneys so received; but in just what manner it disposed of the latter sum does not appear beyond the fact that it paid in full all its debts except three or four, which, but for one presently to be mentioned, were for amounts that were not considerable. It also disposed of all its personal assets except a bank balance of less than $400. Further, it proceeded to tear down buildings and remove machinery from its

plant. These last acts brought to light the following facts and brought about the following events:

The corporation had conducted its business upon premises and in a plant which it acquired from the owner, Charles H. Leonard, under two leases, the relevant one, bearing date in October, 1917, being for the term of one year and four months from the first day of January then next ensuing. In this lease the corporation, as lessee, covenanted that at the expiration of the term it would surrender the premises with the appurtenances to the lessor in the same good order and condition in which they were when it received them. It remained in possession of the premises until the end of the term, when it breached its covenant by committing waste. Thereupon, Leonard, the lessor, brought suit against the corporation in the Supreme Court of the State of New Jersey, and on February 13, 1920, obtained judgment for $9,000, afterwards affirmed by the Court of Errors and Appeals of that state. 112 Atl. 252.

Having obtained judgment in the trial court, Leonard, on March 22, 1920, filed an involuntary petition in bankruptcy against the corporation in the District Court of the United States for the District of New Jersey, wherein he declared on the judgment as a provable claim and averred as an act of bankruptcy payment by the corporation, while insolvent and within four months prior to filing the petition, of the sum of $1,000 to one of its creditors, name unknown, with intent to prefer such creditor above its other creditors.

On reference, a special master found the corporation insolvent and to have committed the act of bankruptcy alleged, and on the corporation's exceptions, the District Court entered the order of adjudication here appealed from.

The main questions under review are, whether the evidence shows that the corporation committed an act of bankruptcy by making a preferential transfer of property under Section 3a, subd. 2 of the Bankruptcy Act (Comp. St. § 9587) as charged by the petition and whether the obligation due by the corporation to Leonard was, and even after reduction to judgment could ever become, a provable debt in bankruptcy.

[1] Upon the question of preferred payment the facts are meager, but they are sufficient, we think, to sustain the court's finding. After the corporation's assets had been almost wholly distributed, and after Leonard had brought suit on his claim, and just before he had recovered judgment thereon, the President of the corporation (who held nearly all its stock) drew several checks, including one for $1,000 to the order of a creditor whose name he had forgotten, and whether "for merchandise or service or notes" he could not remember. Being unfamiliar with the corporation's accounts and knowing no one who knew them any better, and as the books had disappeared,—he was not able to throw any light upon the transaction.

We are not unmindful of the rule that to be valid the allegation of the commission of an act of bankruptcy should state the specific facts relied on, with time, place and circumstances, so that the alleged bankrupt may be apprised of what he is required to answer, Clark v.

Henne & Meyer, 127 Fed. 288, 62 C. C. A. 172; and that, when the act was an alleged preferential payment, the allegation must show that thereby one creditor was enabled "to obtain a greater percentage of his debt than any other of such creditors of the same class," Mills v. J. H. Fisher & Co. 159 Fed. 897, 900, 87 C. C. A. 77, 80 (16 L. R. A. [N. S.] 656). Yet we are of opinion that the petitioner's allegation of the act of bankruptcy stated the circumstances with sufficient particularity to apprise the corporation of what it was called upon to meet, as later proved by the event, and showed that, because of the preference, the petitioner will suffer in the payment of his claim—if his claim is provable in bankruptcy. This is the central matter in controversy.

[2] Conceding that at the time of the alleged preferential payment Leonard's claim for waste to the demised premises had been presented to the corporation and payment refused, that suit therefor had been begun, but that judgment had not been rendered, the corporation maintains that the lessor was not in position to complain of the $1,000 payment, though preferential, because his claim then or thereafter was not provable in bankruptcy under section 17a of the Bankruptcy Act (Comp. St. § 9601). This section, under the title of "Debts not Affected by a Discharge," provides that:

"A discharge in bankruptcy shall release a bankrupt from all his provable debts, except such as * * *

"(2) Are liabilities * * * for wilful and malicious injuries to the person or property of another. * * * "

In other words, the corporation maintains that its obligation to Leonard at the time of the preferential payment was solely in tort, that the judgment afterward recovered was likewise in tort, and that a claim for unliquidated damages founded upon tort, or a judgment sounding in tort, is not provable in bankruptcy.

To maintain this position the corporation cites the statute of waste of the State of New Jersey (4 Comp. St. 1910, pp. 5789–5791), which like most state statutes of waste, was founded on the statutes of Marlbridge and Gloucester (52 Hen. III, c. 23; 6 Edw. I, c. 5). This statute, like its English models, did not create new kinds of waste but simply extended the remedies afforded by the common law for waste against tenants in dower and curtesy—whose estates were created by law—to tenants for life and for years, whose estates were created by contract, where, until the statute, no remedy for waste was available. By its construction of this statute the corporation maintains that actions for waste in the State of New Jersey are in form actions on the case in the nature of waste grounded on the statute, Townshend v. Moore, 33 N. J. Law, 284, and that, in consequence, Leonard's action for waste in the state court was not on the covenant of the lessee but on the liability created by the statute. By endeavoring thus to show that the gravamen of the action for waste in the New Jersey court was a breach of a statutory duty the corporation seeks to withdraw from the action as brought all characteristics of a breach of contract. We do not regard this position as sound because the very authority on which the corporation relies recognized that the New

Jersey statute, like the English statutes, while affording a remedy by an action on the case in the nature of waste founded on tort against a tenant for life or years, did not destroy the remedy of an action of waste founded on contract, and admitted that, notwithstanding, the New Jersey statute, the action of waste on liability created by covenant was preserved. Townshend v. Moore, supra; 2 Wait's Actions and Defenses, 362; 6 Wait's Actions and Defenses, 253.

Applying this construction of the New Jersey law as made by the New Jersey courts to his complaint filed in the suit in the state court, printed in the record, it is clear that Leonard, the lessor, brought an action of waste on the lease, pleaded the covenant, and sought to recover, and did recover, non-punitive damages for its breach, and that, therefore, the action arose not on the liability created by the statute but on the corporation's liability created by the lease. In a word, the action arose in contract. How does the Bankruptcy Act regard such liability?

While we find from section 17a of the Bankruptcy Act that certain debts are not provable in bankruptcy, it is from section 63 (Comp. St. § 9647) that we learn what debts are provable. Among these are debts arising upon contract, express or implied. Crawford v. Burke, 195 U. S. 176, 25 Sup. Ct. 9, 49 L. Ed. 147. That a claim for waste to demised premises arises from contract is true from its very nature. Waste is defined by Pollock as:

"Any unauthorized act of a tenant for a freehold estate not of inheritance, or for any lesser interest, which tends to the destruction of the tenement, or otherwise to the injury of the inheritance." Poll. Torts, 327.

It is defined by the Massachusetts courts as:

"Any unreasonable or improper use, abuse, mismanagement or omission of duty touching real estate by one rightfully in possession which results in its substantial injury." Delano v. Smith, 206 Mass. 365, 92 N. E. 500, 30 L. R. A. (N. S.) 474.

By Archibald, it is said that:

"Waste is a spoil or destruction in lands, houses, trees, or other corporeal hereditaments committed or permitted by a tenant under certain tenures, to the disherison of him who has the remainder or reversion. * * *" Archibald's Pl. 11 and 12; 2 Sellon, 335.

Always there is the relation of reversioner and tenant in possession in a claim for waste; and where, as here, that relation is technically one of lessor and lessee it arises from a contract of demise. The character of the claim then is contractual, and being so, the Bankruptcy Act takes cognizance of it.

But assuming that a claim for waste arising from contract is provable in bankruptcy when liquidated, the corporation further contends that because the lessor's claim for waste in this case was unliquidated at the time of the corporation's act of bankruptcy in making a preferential payment, it is not provable, relying upon rulings of the courts, frequently made, that:

"A claim for unliquidated damages founded upon tort is not provable in bankruptcy."

But some courts in so construing the Act have been cautious to make the distinction, on which we think this case turns, by the qualification that:

"A claim for unliquidated damages resulting from injury to the property of another, *not connected with or growing out of any contractual relation* (or, as one court put it—*unaccompanied* with contractual liabilities) is not provable in bankruptcy, under the existing law." In re New York Tunnel Co., 159 Fed. 688, 86 C. C. A. 556 (C. C. A. 2d), following Brown & Adams v. United Button Co., 149 Fed. 48, 79 C. C. A. 70, 8 L. R. A. (N. S.) 961, 9 Ann. Cas. 445 (C. C. A. 3d).

The injury to property for which the claim for damages at one time unliquidated was made was incontestably connected with and grew out of the contractual relation of lessor and lessee existing between Leonard and the bankrupt. This distinction validly brings the claim of the petitioning creditor within the purview of the Bankruptcy Act, and having later been liquidated by reduction to judgment, he was entitled to use it as the basis of his petition in bankruptcy.

The order below is affirmed.